# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# MEDFORD DIVISION

JENNIFER GAYMAN,

            Plaintiff,

v.

CITY OF BROOKINGS, BROOKINGS POLICE
DEPARTMENT, BROOKINGS POLICE
CHIEF KELBY MCCRAE, RAY MARRINGTON,
BRYAN BROSE, TOBIAS CHITTOCK,
MITCHELL POFAHL, and EVERETT DIAL,

            Defendants.

Case No. 1:20-cv-00440-CL

**FINDINGS AND RECOMMENDATION**

---

CLARKE, Magistrate Judge.

    Plaintiff Jennifer Gayman brings claims against the City of Brookings, Brookings Police Department and Police Chief, and individual officers, Ray Marrington, Bryan Brose, Tobias Chittock, Mitchell Pofahl, and Everett Dial (collectively, the "Officer defendants"). The case comes before the Court on Plaintiff's motion for partial summary judgment (#34), filed against the individual Officer defendants. The Court held oral argument on October 5, 2021. For the

reasons below, Plaintiff's motion for summary judgment (#34) should be granted in part and denied in part.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## BACKGROUND

The material facts regarding the actions of Officer Chittock and Officer Marrington in this case are not in dispute. Plaintiff is a Brookings, Oregon resident, who suffers from multiple

disabilities, including Best's disease with macular degeneration of both eyes, Chronic Obstructive Pulmonary Disease (COPD), asthma, lumbar degeneration causing lower back pain and symptoms and peripheral neuropathy. Ex. 1.[1] On August 9, 2012, Plaintiff was prescribed a mobility device by her physician to assist with her limited mobility functions and she has been reliant upon it for transportation ever since. Ex. 2.

On the early morning of November 19, 2018, Plaintiff had just finished singing karaoke with some friends and was driving her mobility scooter home. Ex. 3. She did not consume any alcohol at the bar. On her way home, Plaintiff was stopped by two City of Brookings police officers, Officer Tobias Chittock and Officer Ray Marrington. The officers told her she had been pulled over for operating her scooter on a sidewalk and within a crosswalk, and for not wearing a safety helmet. *Id.*; Ex. 4. Officer Chittock's incident report from that night states that he initially saw the Plaintiff riding her scoter through the pedestrian crosswalk, and when she crossed in front of him no helmet was visible. Ex. 12. The report states that Officer Marrington checked the Oregon Revised Statutes to confirm that driving a motorized scooter in a crosswalk and without a helmet is a violation. Officer Chittock's report states that, while the officers were approaching her, he observed Plaintiff "driving on and off of sidewalks at a high rate of speed while making quick and jerky movements." *Id.* The officers then conducted a traffic stop.

Plaintiff immediately began to argue the legality of the stop and attempted to explain that she was disabled and that she had a legal right under the ADA to operate her mobility scooter within all areas accessible to pedestrians, including a crosswalk and on sidewalks, and that she was not required to wear a safety helmet. According to Officer Chittock's incident report, Plaintiff was "immediately verbally aggressive." The officers told Plaintiff that the law "was

---

[1] Exhibits 1-10 are attached to Plaintiff's declaration (#34). Exhibits 12 and 14 are attached to Plaintiff counsel's declaration (#39).

Page 3 – FINDINGS AND RECOMMENDATION

actually looked up before" they stopped her and that she was not permitted to ride her scooter through the crosswalk or on the sidewalk. Ex. 4. Plaintiff strenuously disagreed with the officers; she again told the officers that she was disabled, and she was driving a mobility scooter. Ex. 12. To illustrate her point, she asked them if elderly people on mobility scooters were acting legally while using them in crosswalks, to which Officer Marrington responded, "Nope, not according to the Oregon Department of Transportation."

As Officer Chittock ran a background check on Plaintiff, Officer Marrington continued arguing with her about her disability rights. During the conversation, Officer Marrington questioned the legitimacy of her disability status and asked whether she was considered legally blind. For over twenty minutes,[2] officers detained Plaintiff while she sat shivering in the cold. *Id.* On multiple occasions, Plaintiff said she was freezing and that she just wanted to go home. *Id.*

Finally, officers issued Plaintiff citations for 1) Operation of a Motor Electric Scooter in a Crosswalk, 2) Unsafe Operation of a Motor Assisted Scooter, and 3) Failure to Wear Protective Headgear. Ex. 4. While reading Plaintiff the charges, officers again seemed to prolong the interaction, notwithstanding that Plaintiff had voiced several times that she was very cold. Ex. 4.

Plaintiff was handed her citations. Ex. 3, 12. Officer Marrington then advised her that she could not drive her mobility scooter the rest of the way home because she did not have a helmet. *Id.* The officers did not offer to give Plaintiff a ride home. Ex. 3. Plaintiff repeated that she did not have another way to get home and that she could not leave her property overnight. *Id.* Officers warned Plaintiff that she would be arrested if she drove her mobility scooter home. Ex.

---

[2] Plaintiff asserts that officers deliberately prolonged the stop to make Plaintiff uncomfortable or even to harm her, as it was very cold that night. Defendants assert that a new officer was being trained, which delayed the process. It is not necessary for the Court to resolve this factual dispute in order to determine the defendants' liability in this case. The parties may present evidence of the officers' intent to prolong the stop and Plaintiff's resulting illness at a trial on damages to the extent it might be relevant at that time.

Page 4 – FINDINGS AND RECOMMENDATION

12. Plaintiff decided to drive her mobility scooter home rather than obey the officers and walk home. Ex. 3, 12.

Officers then engaged in a "slow pursuit," following Plaintiff home while traveling approximately 15 miles per hour for the next several minutes, all the while displaying emergency lights and sirens. Ex. 5, 12. Officers radioed for backup and reported to other officers that Plaintiff was eluding.[3] *Id.*

As Plaintiff arrived home and entered her garage, Officer Marrington and Officer Chittock surrounded, restrained, and arrested her. *Id.* When Plaintiff was released the next morning, officers had cited her with two additional violations: 1) Fleeing or attempting to elude a police officer (ORS § 811.540); and 2) Interfering with a peace, parole or probation officer (ORS § 162.247). Ex. 6. Plaintiff was prosecuted by the Curry County District Attorney's Office and she received a felony conviction on the charge of fleeing or attempting to elude a police officer. Ex. 7. Consequently, Plaintiff served 5 days in jail, received 18 months of supervised probation, and had her driver's license suspended. Ex. 8. The Oregon Court of Appeals reversed Plaintiff's conviction, ruling that the trial court should have granted her an acquittal. Ex. 9.

Plaintiff was also tried and convicted in municipal court on the three traffic citations on January 3, 2019. Plaintiff appealed those citations to the Circuit Court on or about November 5, 2019, but her appeal was denied.

## DISCUSSION

Plaintiff brings claims for violations of her rights under the Americans with Disabilities Act (ADA) and the Fourth Amendment, as well as tort claims for assault, battery, and false imprisonment. Now, she moves for summary judgment on all of these claims against the

---

[3] The Court can only assume the local SWAT team was unavailable to assist the officers that evening.

Page 5 – FINDINGS AND RECOMMENDATION

individual officers who stopped, detained, pursued, and arrested her on November 19, 2018. The defendants dispute the legal implications of their actions, but they do not dispute most of the material facts. Therefore, several of the issues in this case are appropriate for summary judgment. The tort claims for assault and battery, however, must be decided by a jury.

**I.  Sufficient evidence exists to grant summary judgment as to two of the four named Officer defendants; Plaintiff's motion should be granted in part and denied in part.**

Plaintiff moves against all of the Officer defendants, but the evidence submitted does not fully support granting summary judgment as to all of the officers named for all claims. It is undisputed that Officer Marrington and Officer Chittock stopped, detained, and cited Plaintiff, and then they told her she could not drive home without a helmet, and pursued and arrested her when she did so. As discussed below, Plaintiff is entitled to summary judgment on her claims that they violated her ADA and Fourth Amendment rights. Additionally, the detention of Plaintiff for failure to wear a helmet, after she had been given her citations, was clearly unlawful and constituted the tort of false imprisonment. However, construing all facts in the officers' favor, there is a question of fact as to whether they knew that the pursuit and arrest of Plaintiff for disregarding their instructions, was unlawful. Therefore, Plaintiff is not entitled to summary judgment as to the tort claims for assault and battery.

Officer Pofahl may have been at the scene and may have participated in Plaintiff's arrest. Plaintiff's evidence consists of directing the Court to where his image can be viewed on the video footage of the stop and comparing that image with a photograph of a "Deputy Mitchell Pofahl" on a social media post by Del Norte County Sheriff's Office from February 13, 2016. Specific allegations as to Officer Pofahl's actions or role in this case are sparse, vague, and insufficient to grant summary judgment. The motion as to Officer Pofahl should be denied.

Finally, Officer Brose signed the paperwork for Plaintiff's citations. Ex. 6. However, he submits evidence stating that he was not involved in the arrest of Plaintiff, he has never been employed with the City of Brookings or the Brookings Police Department, and on the night of November 18 and morning of November 19, 2019, he was working as an officer at the Curry County Jail. Decl. Brose (#38-3). Plaintiff concedes that the state law claims against Officer Brose should be dropped. She maintains that he is an appropriate defendant for her ADA claim for insufficient accommodations at the jail. The Court does not find sufficient evidence exists to grant this claim as a matter of law. The motion as to Officer Brose should be denied.

## II. Officer Marrington and Officer Chittock violated Plaintiff's rights under the Americans with Disabilities Act; Plaintiff is entitled to summary judgment.

Under the Americans with Disabilities Act (ADA), "a public entity shall permit individuals with mobility disabilities to use wheelchairs and manually-powered mobility aids... in any areas open to pedestrian use." 28 C.F.R. § 35.137. "Public entities" under Title II include law enforcement officers. *Gorman v. City of San Diego*, 2012 WL 1835689, at *2 (S.D. Cal. May 21, 2012) (*citing Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir.2001)). For ADA purposes, a "wheelchair means a manually-operated or power-driven device designed primarily for use by an individual with a mobility disability for the main purpose of indoor or of both indoor and outdoor locomotion." 28 C.F.R. § 36.104. Plaintiff's mobility scooter is an E-Wheels EW-66 Scooter. Ex. 10. It was designed primarily for people with a mobility disability. According to Dr. Sharmeen Nelson, Plaintiff's physician, the mobility scooter was prescribed to Plaintiff specifically because of her disabilities. Ex.'s 1-2. Thus, the mobility scooter qualifies as a "wheelchair" under the ADA, and she was entitled to drive it in areas open to pedestrian use.

Plaintiff was given three initial citations in the early morning hours of November 19: 1) Operation of a Motor Electric Scooter in a Crosswalk (ORS 814.528); 2) Unsafe Operation of a

Page 7 – FINDINGS AND RECOMMENDATION

Motor Assisted Scooter (ORS 814.524); and 3) Failure to Wear Protective Headgear (ORS 814.534). The defendants do not dispute the fact that Plaintiff is disabled or that she uses her mobility scooter for the proper purposes designated under the ADA. However, because Plaintiff did not appeal her citations past the decision by the Curry County Circuit Court, defendants argue that those judgments preclude Plaintiff from asserting her rights under the ADA. The Court disagrees. Plaintiff does not dispute that she was convicted of these three violations. She does not seek to overturn the judgments entered against her and the Court does not purport to do so. Those judgments stand, and Plaintiff may not recover the fines imposed as a result. Nevertheless, this Court is entitled to evaluate whether the actions of the officers violated the ADA by discriminating against Plaintiff because of her disability. For the reasons below, the Court finds that the undisputed actions taken by Officer Marrington and Officer Chittock were discriminatory under the ADA.

First, Plaintiff was allowed to safely operate her mobility scooter on the sidewalk, in the crosswalk, and without a helmet. As discussed above, under the ADA a disabled person on a mobility scooter may enter any area open to pedestrian use. Law enforcement officers are public entities and are required to comply with the ADA.

Similarly, under Oregon state law, such a person is considered a "pedestrian." *State v. Greene*, 283 Or App 120, 121 (2016) (holding that "a person operating a motorized wheelchair in a crosswalk is a pedestrian and not a driver of a vehicle for the purposes of the DUII statutes."). While the statutes cited in this case are not part of the DUII statutes, there is no reason the same logic and holding should not apply. The Oregon Court of Appeals confirmed this logic and specifically applied the *Greene* holding to the facts of this case, reversing Plaintiff's felony conviction. *State v. Gayman*, 312 Or. App. 193, 201 (2021) (holding that

Plaintiff's mobility scooter was not a motor vehicle for purposes of the statutes). Moreover, as noted by the Court of Appeals, one of the citations given to Plaintiff that night specifically makes a distinction between an operator of a motor assisted scooter and a person with a disability operating a motor assisted scooter: "This section does not apply to a person with a disability operating a motor assisted scooter in a crosswalk." *Id.* citing ORS 814.528. While the Oregon Court of Appeals did not disturb the judgments against Plaintiff for the three citations, it did hold that it was "obvious and not reasonably in dispute that [Plaintiff] was… operating her motor assisted scooter that she used due to a disability." Similarly, without disturbing those judgments, this Court holds that, because it was obvious and not reasonably in dispute that Plaintiff was operating her mobility scooter due to a disability, under the ADA and Oregon law Plaintiff should have been considered a "pedestrian" and allowed to operate her mobility scooter in a crosswalk, on the sidewalk, and without a helmet. Because the officers stated that they stopped Plaintiff for that very same conduct,[4] their actions were discriminatory under the ADA.

Second, after giving her the citations, the officers stated that Plaintiff could not drive her scooter home without a helmet; then they pursued and arrested her because she did so. As discussed above, as a "pedestrian," Plaintiff had a right to operate her mobility scooter without a helmet; therefore, that act was not a crime. Moreover, the statute the officers cited for failure to

---

[4] The incident report filed by Officer Chittock indicates that Plaintiff may have been driving erratically right as officers initiated the stop. It is important to note that unsafe operation of a mobility scooter, even by a disabled person, would give the officers probable cause to make a stop. While there is no evidence in this case that any other person was in the Plaintiff's vicinity or that she was driving in such a manner as to endanger herself or others, Officer Chittock's report creates an issue of fact as to the initial stop and the citation for unsafe operation of a motor assisted scooter. However, the undisputed acts of targeting and citing Plaintiff for driving her mobility scooter on the sidewalk, in the crosswalk, and without a helmet remain discriminatory, as well as the conduct that occurred after the citations were issued. Therefore, the Court need not resolve the dispute of fact as to whether the initial stop and the citation for unsafe operation were also discriminatory.

Page 9 – FINDINGS AND RECOMMENDATION

wear protective headgear, ORS 814.534, states that "the offense described in this section... is a specific fine traffic violation." The presumptive fine is $25, and the statute states that the fine will be waived by a showing to the court that a person has the proper headgear. ORS 814.534(3-4).[5] Even if this statute applied to Plaintiff, which as a disabled person it does not, the reasonable action would have been to cite her and let her go home. The idea that officers should have forced a disabled person to abandon her mobility device on the side of the road and walk home after midnight on a cold, November night because she was not wearing a helmet is unreasonable and discriminatory.

For these reasons, the Court finds that Officer Marrington and Officer Chittock took the following discriminatory actions under the ADA: (1) stopping and citing Plaintiff for operating her mobility scooter in a crosswalk, on a sidewalk, and without a helmet, (2) stating that Plaintiff was not allowed to ride the scooter home without a helmet, (3) pursuing her to her home with lights, sirens, and calling for back-up because she did so, and (4) arresting her. Plaintiff is entitled to summary judgment on these claims.

### I.   Officer Marrington and Officer Chittock violated Plaintiff's rights under the Fourth Amendment.

Plaintiffs may enforce a wide range of federal constitutional rights under 42 U.S.C. § 1983 against defendants who act under color of state law, including police officers. The Fourteenth Amendment creates numerous rights enforceable under § 1983, namely substantive and procedural due process, the equal protection of the laws, and those rights in the Bill of Rights incorporated by the Due Process Clause of the Fourteenth Amendment. These

---

[5] A person is also exempt from the helmet requirement if wearing the headgear would violate a religious belief or practice of the person. ORS 814.534(2).

incorporated rights include rights protected by the Fourth Amendment against unreasonable searches and seizures.

Whenever an officer restrains the freedom of a person to walk away, he has seized that person. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). A seizure violates the Fourth Amendment if it is objectively unreasonable under the circumstances. *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003). A police officer may arrest a person if he has probable cause to believe that person committed a crime. *E.g., United States v. Watson*, 423 U.S. 411 (1976).

Here, it is undisputed that Plaintiff was seized by Officer Marrington and Officer Chittock. The officers agree that at the time of the initial stop, they told Plaintiff that she was not free to leave. Once she had received her citations, officers told her that she could not ride her mobility scooter home, effectively seizing her a second time. They then pursued her and arrested her in her garage.

The officers' seizure of Plaintiff was objectively unreasonable under the circumstances, as a matter of law. First, as evidenced by the bodycam footage and audio recording, officers told her that she had been pulled over for operating her scooter on a sidewalk and within a crosswalk, and for not wearing a safety helmet. As discussed above, the statutes cited by the officers in issuing Plaintiff two of the three citations were demonstrably incorrect and inapplicable to a disabled person. Second, even if Plaintiff was riding her scooter in an unsafe manner, thereby granting officers probable cause to stop and detain her, the stop should have ended when they issued her the citation. Officers had no authority to tell Plaintiff that she could not ride her mobility scooter home without a helmet, forcing a disabled person to abandon her assistive device on the side of the road and walk home in the middle of the night.

Finally, the defendants turned on their lights and sirens, and called for backup, and engaged in a "slow pursuit" of a disabled person on a mobility scooter, arresting her upon arrival at her home. For the reasons discussed above, this conduct was objectively unreasonable. Plaintiff should have been allowed to drive her mobility scooter home without a helmet. The defendants argue that, even if her conviction for attempting to elude was overturned, she still committed the criminal offense of interfering with a police officer when she disregarded the officers' order not to drive the scooter home without a helmet. They contend that she was effectively "arrested" at that time, and that her decision to leave the scene was tantamount to "fleeing custody." Def. Resp. (#38). These arguments are unavailing.

First, Plaintiff was not and could not have been charged with interfering with a police officer. That statute provides in relevant part:

> A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer... [r]efuses to obey a lawful order by the peace officer or parole and probation officer.

ORS 162.247 (1)(b). By its own terms, the statute pertains only when a person refuses to obey a police officer's "lawful" order. The inclusion of that word "removes from the statute's sweep any refusal to follow an order that is inconsistent with the substantive law." *State v. Illig-Renn*, 341 Or. 228, 238, 142 P.3d 62, 69 (2006). In this case, the Court has determined above that the order for Plaintiff not to leave the scene on her scooter without a helmet was not a lawful order. Moreover, the terms of the statute also provide that a person "may not be arrested or charged under this section if the person is arrested or charged for another offense based on the same conduct." Here, the officers had already cited, or charged Plaintiff for the "same conduct," *i.e.*, failing to wear a helmet. For both of these reasons, Plaintiff should not have been arrested or

charged with this offense, and the officers' conduct was not reasonable. The same or similar exceptions apply to the other statutes cited by the defendants. *See* ORS 162.145(2) ("It is a defense to a prosecution under this section that the person escaping or attempting to escape was in custody pursuant to an illegal arrest."). Finally, the charge for attempting to elude police officers did not apply to the Plaintiff, as a disabled person operating a mobility scooter, for all of the reasons discussed above.

The defendants' order stating that Plaintiff could not leave the scene without a helmet was unlawful. Moreover, after a lengthy stop resulting in the issuance of three citations for the same conduct, the stop should have ended. Officers had no authority to arrest or charge Plaintiff with interference with a police officer or any further charges. The pursuit and arrest of Plaintiff for failure to wear a helmet was a fundamentally unreasonable seizure. Plaintiff is entitled to summary judgment on her Fourth Amendment claim against Officers Marrington and Chittock.

## II. Officer Marrington and Officer Chittock are liable for false imprisonment.

False arrest, sometimes called false imprisonment, is an imposition of unlawful restraint on another's freedom of movement. *Buckel v. Nunn*,133 Or App 399, 405, 891 P2d 16 (1995) (security guard's interrogation of plaintiff regarding employee theft, during which plaintiff did not feel free to leave, supported finding of false imprisonment). The torts of false imprisonment and false arrest are indistinguishable. *Hiber v. Creditors Collection Service of Lincoln County, Inc.*, 154 Or App 408, 413, 961 P2d 898 (1998); *Wallace v. Kato*, 549 US 384, 388–389, 127 S Ct 1091, 166 L Ed2d 973 (2007); 35 CJS False Imprisonment §2 (2009). The elements of a claim of false arrest are as follows:

1. The defendant must confine the plaintiff;
2. The defendant must intend to confine the plaintiff;
3. The plaintiff must be aware of the confinement; and
4. The confinement must be unlawful.

*Ross by and Through Ross v. City of Eugene*, 151 Or App 656, 663, 950 P2d 372 (1997); *Hiber*, 154 Or App at 413. A person who interferes with another's liberty does so at his or her peril and, to escape liability, must justify the interference by proof of its legality. *Knight v. Baker*, 117 Or 492, 495, 244 P 543 (1926); *Christ v. McDonald*, 152 Or 494, 52 P2d 655 (1935) (police officers falsely imprisoned plaintiff when they professed to have authority and commanded plaintiff to go with them, plaintiff obeyed, and they all went together in direction pointed out by police officers); *Easton v. Hurita*, 290 Or 689, 691–692, 625 P2d 1290 (1981); *Carr v. City of Hillsboro*, 497 F Supp. 2d 1197, 1213 (D Or 2007).

As discussed above, the defendants may have had probable cause to stop Plaintiff and cite her for unsafe operation of her mobility scooter, but once the citation had been issued, Plaintiff should have been free to leave. Officer Marrington and Officer Chittock had no authority to continue to detain Plaintiff after that point, yet they instructed her that she was not free to leave and that if she attempted to drive her scooter without a helmet, she would be arrested. This was an unlawful detainment constituting false imprisonment. Plaintiff should be granted summary judgment on this claim.

### III. A question of fact exists as to whether Officer Marrington and Officer Chittock are liable for assault and battery.

In the civil tort context, assault is an intentional attempt to engage in harmful or offensive contact with the person of another, coupled with the present ability to carry the intention into effect. *Cook v. Kinzua Pine Mills Co.*, 207 Or 34, 48 (1956). The elements of assault are (1) an attempt (2) to cause harmful or offensive physical contact, (3) combined with the present ability to carry such intention into effect. *Id.*

A battery is a voluntary act that intentionally causes harmful or offensive contact with another. *Cook*, 207 Or. at 48–49. There must be an intent to cause harmful or offensive contact with the person of another. It is not necessary that the offensive contact cause physical harm; "it is sufficient if the contact is offensive or insulting." *Bakker v. Baza'r, Inc.*, 275 Or 245, 249, 551 P2d 1269 (1976) (store security guard's physical contact with plaintiff while opening plaintiff's shopping bag constituted battery). The elements of battery are (1) an intent to cause harmful or offensive physical contact or cause an apprehension that harmful or offensive physical contact will occur, and (2) harmful or offensive physical contact that is caused by the intentional act. *Id.* at 249; *Cook*, 207 Or. at 48–49.

"A police officer has a complete defense to civil liability for assault or battery if the officer used force as authorized by statute." *Wagoner v. City of Portland*, No. 3:14-cv-2063-AC, 2017 WL 2369399, at *10 (citing *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 763 (1975)). Oregon's use of force statute[6] provides that "a peace officer is justified in using physical force upon another person only when and to the extent that the peace officer reasonably believes it necessary ... [t]o make an arrest or to prevent the escape from custody of an arrested person unless the peace officer knows that the arrest is unlawful." O.R.S. 161.235(1) (emphasis added). "ORS 161.235 is a full defense to the battery claim." *Mateo v. City of Portland*, No. 3:13-CV-00180-KI, 2014 WL 4384595, at *6 (D. Or. Sept. 3, 2014).

Here, having determined above that officers did not have any authority or probable cause to pursue and arrest Plaintiff for operating her mobility scooter home without a helmet, the Court finds that the officers' conduct in arresting Plaintiff and transporting her to jail was unreasonable

---

[6] ORS 161.235 was recently repealed by the Oregon Legislature and replaced with a different statute. *See* Oregon Laws 2020, c. 3 (2nd Sp. Sess.), § 7 operative Jan. 1, 2021. At the time of the events in this case, ORS 161.235 was still in effect.

Page 15 – FINDINGS AND RECOMMENDATION

as a matter of law. However, because ORS 161.235 was a complete defense to assault and battery at the time of the incident, Plaintiff must show that Officer Chittock and Officer Marrington knew that their arrest of Plaintiff was unlawful. According to the officers, they believed that they had authority under Oregon law and ODOT policies to detain Plaintiff and to prevent her from driving her scooter home without a helmet, and they believed that when she disregarded their instructions that she was eluding and fleeing the scene.

A reasonable factfinder could easily find that the officers here pursued and arrested Plaintiff for challenging their authority and attempting to enforce her disability rights; it is therefore possible that they knew that their actions were unlawful and that they are liable for assault and battery. However, a reasonable jury could also find that the officers truly believed, reasonably or not, that they were making a lawful arrest. The parties have the right to have this question of fact determined by a jury. Summary judgment on these claims should be denied.

### IV. The *Rooker-Feldman* doctrine and issue preclusion are inapplicable to this case.

Plaintiff's claims are not precluded by the prior criminal proceedings. The *Rooker–Feldman* doctrine takes its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments. *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir.2003). "A suit brought in federal district court is a de facto appeal forbidden by *Rooker-Feldman* when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court and seeks relief from a state court judgment based on that decision.'" *Carmona v. Carmona*, 603 F.3d 1041 (2010) (quoting *Noel*, 341 F.3d at 1164). In contrast, if a

plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction. *Id.*

The *Rooker-Feldman* doctrine does not apply here. Plaintiff is not attempting to overturn any judgments rendered against her at the state level, namely, the charges of operating a motor electric scooter in a crosswalk; unsafe operation of motor assisted scooter; and failure to wear protective headgear. In fact, Plaintiff is not even seeking redress for the felony judgment against her, which was overturned by the Oregon Court of Appeals. Those judgments required her to serve probation and jail time, and to pay a nominal fine, and Plaintiff is not seeking relief from those results. Rather, plaintiff is seeking relief for the conduct of officers Marrington and Chittock on that night in November, 2018. Specifically, Plaintiff is seeking relief for defendants' actions in stopping, detaining, pursuing, arresting, and confining her without probable cause, and for being discriminated against because of her disabilities. The state court judgments will remain undisturbed, and therefore *Rooker-Feldman* does not apply.

Similarly, claim preclusion and issue preclusion, also called collateral estoppel, do not apply to bar Plaintiff's claims. When a federal court's jurisdiction is based on the presence of a federal question under 28 U.S.C. § 1331, the federal preclusion doctrine applies. *See, e.g., Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Under federal preclusion, courts assess whether the two actions "arise out of the same transactional nucleus of facts." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992) (quoting *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987)). "It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003).

Federal claim preclusion does not apply here because the claims asserted could not have been brought in the criminal proceedings that resulted in the judgments against Plaintiff. Those were criminal proceedings, and Plaintiff's civil claims under the ADA and the Fourth Amendment and her tort claims could not have been pursued during those proceedings.

Under Oregon law, "[i]ssue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Util. Dist*, 318 Or 99, 103 (1993); *see also State Farm Fire & Cas. Co. v. Sallak*, 140 Or App 89, 92, rev den, 324 Or 18 (1996). "[The doctrine] applies to an issue of either fact or law." *Drews v. EBI Cos.*, 310 Or 134, 140 (1990). In *Nelson*, the court enumerated five requirements that must be met for a tribunal's decision on an issue to preclude litigation of that issue in a subsequent proceeding:

1. The issue in the two proceedings is identical.
2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.
5. The prior proceeding was the type of proceeding to which [the] court will give preclusive effect.

318 Or at 104 (internal citations omitted).

To the extent that Oregon issue preclusion can be raised as to the tort claims in this case, it does not apply to preclude the claims. The criminal proceedings that resulted in the judgments against Plaintiff did not litigate identical issues to the case at bar. First, there is no evidence in the record that any judge or jury made a specific finding of probable cause as to the defendants' stop and detainment of Plaintiff, either at the outset of the stop or after issuance of the citations. Second, even to the extent that the issues overlap, in this case it is the officers' conduct after

issuing Plaintiff the three citations is alleged to be unreasonable and unlawful, and none of that conduct has been litigated previously to a preclusive final judgment. The charge for interfering with a police officer was dropped, and the conviction for attempting to elude was overturned. Issue preclusion is inapplicable to this case.

### V.     The Officer defendants are not entitled to immunity.

Qualified immunity exists when "a reasonable officer could have believed, in light of clearly established law, that his conduct was lawful." *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1319 (9th Cir. 1995). Defendants assert that they are entitled to qualified immunity because the law holding that Plaintiff's mobility scooter is not a "motor vehicle" for purposes of the statute on fleeing and eluding police was not clearly established until the Court of Appeals' decision reversing Plaintiff's felony conviction. Defendants claim that, based on guidance published by the Oregon Department of Transportation, it was and still is reasonable for officers to treat a motorized scooter as a motor vehicle and to cite operators of mobility scooters for driving on a sidewalk and not wearing a helmet. The Court disagrees.

The undisputed facts in the record show that the officers in this case acted unreasonably to target, detain, and arrest a disabled person who was trying to ride her mobility scooter home. The *Greene* case made it clear that disabled people driving mobility scooters should be treated as pedestrians. However, even if officers did act reasonably in stopping and citing Plaintiff for unsafe operation of her scooter, that reasonable course of action terminated when they gave Plaintiff her citations. The subsequent acts of stating that Plaintiff could not ride her scooter home without a helmet, pursing her with lights and sirens and calling for back up, and arresting Plaintiff for doing so, were an unreasonable violation of clearly established rights as discussed in the sections above. No officer could have believed that pursuing, detaining, and arresting her for

the "crime" of not wearing a helmet, when officers had already given her a waivable $25 traffic citation for the same conduct, was a lawful use of force and authority. The officers are not entitled to qualified or discretionary immunity in this case.

## RECOMMENDATION

Plaintiff's motion for partial summary judgment (#34) should be granted in part and denied in part. The motion as to her claims for violations of the ADA and the Fourth Amendment, and false imprisonment, should be granted against Officers Marrington and Chittock. The motion should be denied as to her tort claims for assault and battery against Officers Marrington and Chittock, and as to all claims against Officers Brose and Pofahl.

Plaintiff is entitled to present evidence on damages for the ADA, Fourth Amendment, and false imprisonment claims to a jury. She should also be allowed to proceed to trial on her remaining claims.

## SCHEDULING

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is entered. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. See FED. R. CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this _14_ day of December, 2021.

MARK D. CLARKE
United States Magistrate Judge